No. 72,543

IN THE MATTER OF BERNARD E. WHALEN, *Respondent.*
(888 P.2d 395)

Opinion filed January 27, 1995.

*Marty M. Snyder,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with her on the formal complaint for petitioner.

*Marvin E. Thompson,* of Thompson, Arthur & Davidson, of Russell, argued the cause for respondent, and *Bernard E. Whalen,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Bernard E. Whalen, an attorney admitted to the practice of law in Kansas. The complaint, filed as case No. B5677, was heard before a hearing panel of the Kansas Board for Discipline of Attorneys. Whalen appeared before this court and advised the court that he does not wish to file exceptions to the panel's report, findings, and recommendations and that he regrets his actions.

This disciplinary proceeding relates to Whalen's actions as a bank trust officer (Count I) and as an attorney in private practice (Count II).

The panel's summary of the evidence in support of Count I provides the factual background in the trust officer matter:

"In 1969 Ms. Scheetz established a charitable trust which was prepared by a Denver law firm. She and Helene Hickert were the co-trustees of the trust. She indicated to Respondent that the administration of the charitable trust became too burdensome for her. She told Respondent that she was constantly receiving calls from persons seeking distributions from the trust. Respondent suggested that she might transfer the assets of her charitable trust to a charitable trust which had previously been established by and was administered by the First National Bank of Goodland. She agreed to this suggestion and on March 9, 1985 she and her co-trustee assigned to the First National Bank Charitable Trust the mineral rights located in two quarter sections of land in Washington County, Colorado, which was the sole asset of the charitable trust she had previously created. Respondent prepared the assignment for Ms. Scheetz' signature.

The assignment was introduced into evidence as Respondent's Exhibit R1 and contained the following provisions:

"2. The irrevocable trust agreement of the First National Bank in Goodland, Goodland, Kansas, hereby agrees to administer that trust in accordance with the provisions of the trust, making contributions to religious, charitable, scientific, literary or educational purposes.

"3. The income of the trust shall be distributed by the Trust Department of the First National Bank in Goodland, Goodland, Kansas, and their determination on the distribution shall be final and binding. However, the First National Bank in Goodland agrees to seek the [advice] and counsel of Teresa M. Scheetz and Helene Hickert, or either of them, as to the distribution.

"Respondent testified that Ms. Scheetz wanted the income distributed primarily to Catholic charities. From the spring of 1985 through the summer of 1989 Respondent was the bank's contact with Ms. Scheetz and he was the one who sought the advice and counsel of Ms. Scheetz in making distributions. During this period Respondent was the person on behalf of the bank who made the final decision as to whom distributions would be made.

"Respondent testified that he became concerned that the distributions of Ms. Scheetz's trust income being made by the bank violated the provisions of the assignment by Ms. Scheetz to the bank charitable trust. He was especially concerned that the bank was distributing money from the trust income directly to First National Bank in payment of a note owed to the bank by the Goodland Activity Center, a charitable organization in Goodland. Apparently, Respondent initially approached Ms. Scheetz at the request of the bank president, Mr. McCants, to determine whether it was acceptable to her to use the income for those payments. Ms. Scheetz 'reluctantly' agreed that the payments could be made from the income. Respondent testified that in his later conversations with Ms. Scheetz she indicated that she no longer approved of continuing these payments. Respondent testified that he discussed this fact with Mr. McCants, but the bank continued to make some payments on the GAC note from Sheetz trust income.

"In December, 1988 Respondent established the St. Patrick's Charitable Trust under which he was both the Settlor and Trustee. On July 20, 1989, Respondent executed on behalf of the bank, both an assignment and a deed to St. Patrick's Charitable Trust of the mineral interests transferred to the First National Bank trust by Ms. Scheetz. He later attempted to complete a transfer order with the oil producer to direct the income to St. Patrick's trust.

"Some time in 1990, the bank discovered that these transfers had taken place and confronted Respondent. Ultimately, the mineral rights were transferred back to the bank trust and no income payments were diverted from the bank trust to the St. Patrick's trust.

"Larry McCants, the President of the First National Bank of Goodland testified that he was not aware of the transfer of the mineral interests and did not authorize them. The bank was forced to report the transfers to the Comptroller

of Currency and the bank was investigated as a result of the transfers. McCants discovered that Respondent had made distributions to individuals and organizations who may not have been qualified to receive distributions from the trust. In order to convince Respondent to transfer the mineral interests back to the bank an agreement had to be reached concerning the future disposition of the trust income.

"Both Respondent and McCants testified that in 1989 Respondent had health problems, including insulin-dependent diabetes and heart problems which required angioplasty procedures. McCants felt that these health problems greatly affected Respondent's performance and judgment. He stated that as a result of Respondent's physical condition, the trust department was in 'chaos'."

## The Disciplinary Panel's Final Report

The following pertinent findings and recommendations were made by the panel:

### "FINDINGS OF FACT

"By clear and convincing evidence the panel unanimously finds that:

. . . .

#### Count I

"2. While acting in his capacity as trust officer for the First National Bank of Goodland, Respondent knowingly transferred assets from a trust administered by the bank to a trust which was administered by Respondent as an individual trustee.

"3. The transfer of assets was made without the knowledge or consent of any other employee of the bank and was a violation of his fiduciary duty to the bank.·

#### Count II

"4. Respondent prepared living trusts and pour-over wills at the request of John and Frieda Nelson. In so doing Respondent established an attorney-client relationship with both John and Frieda Nelson. [The background in the Nelson matter is explained by the panel in its Count II conclusions of law.]

"5. Respondent represented two of the five sons of John and Frieda Nelson after the death of John Nelson concerning the Estate of John Nelson and the living trust of John Nelson. This representation involved matters which are related to the subjects discussed and the work performed for John and Frieda Nelson by Respondent in preparing their estate plan.

"6. The position taken by the sons represented by Respondent was directly opposed to the position taken by Frieda Nelson.

"7. Respondent did not consult with Frieda Nelson about or obtain her permission to represent her two sons in the issues surrounding the settlement of the estate of her husband."

### "CONCLUSIONS OF LAW
#### Count I

"Because Respondent was employed as a trust officer rather than acting as a lawyer representing a client at the time of the wrongful conduct, the conduct does not fit the rules as neatly as in other cases. The parties have agreed that the conduct of Respondent violates MRPC 1.8 [1994 Kan. Ct. R. Annot. 317 (conflict of interest: prohibited transactions)]. Respondent knowingly acquired as trustee an ownership interest adverse to his client (First National Bank). He prepared the documents to transfer the interest without disclosing the transfer to his client. Respondent's conduct also violated Rule 8.4 [1994 Kan. Ct. R. Annot. 379 (misconduct)] in that by transferring property owned by his client/ employer to another entity he converted property owned by another person without his or her consent. . . .

### Count II

"The conduct set out in this count violates MRPC 1.9 [1994 Kan. Ct. R. Annot. 320 (conflict of interest: former client)]. In advising Mr. and Mrs. Nelson concerning their joint estate plan and preparing wills and trusts for each of them, Respondent represented both John and Frieda Nelson. MRPC 1.9 states that:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation . . . .

Mrs. Nelson was a former client. Respondent represented two of Mrs. Nelson's sons in a matter involving the estate plan about which he had advised Mrs. Nelson when the sons' interests were materially adverse to those of Mrs. Nelson. He neither consulted with nor obtained the consent of Mrs. Nelson to carry on his representation of her sons. While this is not a terribly egregious violation of this rule it is nonetheless a violation. Arguably, information obtained from Mrs. Nelson in the course of developing the estate plan might have been used against her in the representation of her sons. The subject matter is so substantially related that information obtained in one representation may have been important in the other. Respondent could easily have avoided this problem if in fact there really was no possibility of using information by obtaining Mrs. Nelson's consent.

". . . The plain language of Rule 1.9 requires Respondent to obtain consent from his former client before undertaking representation concerning a substantially related matter which is adverse to the interests of the former client. Mrs. Nelson wished to achieve a result which is different from that which her two sons sought to achieve. Clearly Respondent was required to advocate a position which is adverse to his former client. It does not matter that the position that Respondent advances is the same as the position taken by Mrs. Nelson at the time the estate plan was prepared. The rule speaks in the present tense."

### "RECOMMENDED DISPOSITION

"The Disciplinary Administrator has recommended that Respondent be suspended from the practice of law.

"In making its recommendations for discipline the Panel has reviewed the *ABA Standards for Imposing Lawyer Sanctions*. Both Counts I and II involve Section 4.3 Failure to Avoid Conflict of Interest.

"Section 4.32 of the *ABA Standards for Imposing Lawyer Sanctions* states that: 'Suspension is generally appropriate when a lawyer knows of conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.'

"Section 4.33 of [the *ABA Standards for Imposing Lawyer Sanctions*] provides that: 'Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.'

"Count II is the easier of the two counts to deal with. It is the belief of the panel that the conduct involved in this count falls within the language of Section 4.33 and that informal admonition is the appropriate discipline.

"Count I involves of a knowing, conscious act on the part of the Respondent. That act could have resulted in substantial injury to the bank. Respondent consciously did not disclose his actions to his client. Thus, the conduct falls more within Section 4.32 than Section 4.32. Thus, absent mitigating circumstances, suspension is the appropriate discipline for the conduct contained in Count I.

"We must then turn to the *ABA Standards* on Aggravation and Mitigation to determine whether any factors presented either aggravate or mitigate the offense.

"1. Aggravating factors.

"a. *Prior disciplinary offenses*. There was no evidence of prior disciplinary offenses.

"b. *Dishonest or selfish motive*. There was no evidence that Respondent sought to enrich himself.

"c. *Pattern of misconduct* and

"d. *Multiple offenses*. The three counts set out in the petition all involve variations on the conflict of interest issue. It appears that Respondent is not sufficiently cognizant of this issue. This factor is present to some degree.

"e. *Bad faith obstruction of the disciplinary proceeding*. This factor was not present.

"f. *Submission of false evidence, etc*. This is not present.

"g. *Refusal to acknowledge wrongful nature of conduct*. The Respondent did not acknowledge that his conduct was wrong.

"h. *Vulnerability of the victim*. This does not seem to be a factor in this case.

"i. *Substantial experience in practice*. Respondent has substantial experience.

"j. *Indifference to making restitution*. This factor is not applicable.

"k. *Illegal conduct*. The conduct of Respondent may have been illegal; although no charges were brought.

"2. Mitigating factors.

"a. *Absence of a prior disciplinary record.* Respondent has no prior disciplinary record.

"b. *Absence of a dishonest or selfish motive.* This is the strongest mitigating factor in the Respondent's defense. He believed that he was 'doing the right thing.' He believed that the bank was not acting in accordance with the desires of Ms. Scheetz and that the actions he was taking would best carry out her wishes.

["c. *Personal or emotional problems.* Not listed in report.]

"d. *Timely good faith effort to make restitution or to rectify consequences of misconduct.* Larry McCants testified that time and negotiations were necessary to secure the transfer of the mineral interests back to the bank. This factor is not present as a mitigating factor.

"e. *The present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgement of the transgressions.* The Respondent was cooperative, but did not acknowledge the wrongfulness of his conduct. This factor is neutral.

"f. *Inexperience in the practice of law.* Respondent had practiced for many years and was not inexperienced.

"g. *Previous good character and reputations.* This factor is present and should be a mitigating factor. Respondent had many letters of recommendation and has been very involved in the community.

"h. *Physical disability.* This is a mitigating factor. It is admitted that Respondent's ability to practice was greatly affected by his physical condition and that it was a factor in the conduct. It appears that this condition has been brought under control.

"i. *Mental disability or chemical dependency including alcoholism or drug abuse . . .*

. . . .

This is not a factor.

"j. *Delay in disciplinary proceedings.* This is not a factor.

"k. *Imposition of other penalties or sanctions.* This is not a factor.

"l. *Remorse.* As discussed above, no remorse was evident to the panel.

"m. *Remoteness of prior offenses.* This is not a factor.

"n. *Any statement by the complainant expressing satisfaction with restitution and requesting no discipline.* This is absent.

In reviewing all of these factors it is the opinion of the panel that there are more mitigating than aggravating factors. The panel is of the opinion that public censure is the most appropriate discipline."

We have reviewed the record and conclude the panel's factual findings and conclusions of law are supported by clear and convincing evidence. We accept the panel's recommendation that censure be imposed and that the court should direct publication of such censure.

IT IS ORDERED that Bernard E. Whalen be censured for violations of MRPC 1.8, 1.9, and 8.4 and that this order be published in the official Kansas Reports. The costs of the proceeding are assessed to the respondent.